IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-79-D

| | |
|---|---|
| VICTOR R. MCALLISTER, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| STATE OF NORTH CAROLINA, et al., ) | |
| ) | |
| Defendants. ) | |

Victor R. McAllister, Sr. ("McAllister" or "plaintiff") is very upset about his child support obligations and about a variety of state-court orders concerning those obligations. On March 3, 2010, McAllister filed suit against the State of North Carolina ("State"), the North Carolina Department of Justice ("NCDOJ"), the North Carolina General Assembly ("General Assembly"), the Cumberland County Child Support Enforcement Agency ("Child Support Agency"), the Cumberland County District Courthouse ("Courthouse"), Resident Superior Court Judge James Floyd Ammons, Jr., North Carolina Court of Appeals Judge Cheri Beasley, District Court Judge (retired) Dougald N. Clark, District Court Judge Robert J. Stiehl III, and Chief District Court Judge Elizabeth Keever (collectively "Judges"), Thomas H. Clements ("Clements"), Gregg Illikainen ("Illikainen"), Carolyn Chavis ("Chavis"), and Laura Snow ("Snow"), alleging that North Carolina laws "were systematically amended to methodically insert fraud and deceit," that "each and every action[] carried out in Cumberland County District Courthouse[] in the name of State of North Carolina ex rel: Laura E. Snow vs. Victor R. McAllister represents a fraudulent action against Plaintiff," and that as a result he was deprived of his rights "under the color of law." Compl. 2. He requests a default judgment in the state action, the return of all child support paid to Snow, the right

to sue all the parties for "stealing the name of his blood," and "compensation for all distress and inflictions stemming out of his persecution." Id.

On May 4, 2010, Illikainen filed a motion to dismiss [D.E. 27]. On May 7, 2010, the Courthouse and Judges moved to dismiss [D.E. 30]. On May 14, 2010, Clements filed a motion to dismiss [D.E. 47–52] to which McAllister responded [D.E. 60]. On June 1, 2010, Illikainen filed a motion to strike [D.E. 58], to which McAllister responded [D.E. 62]. On June 2, 2010, McAllister filed a motion to amend his complaint [D.E. 59]. On June 3, 2010, Illikainen filed a second motion to strike [D.E.61]. On June 4, 2010, McAllister filed a motion to strike and a motion to compel [D.E. 63]. On June 10, 2010, Chavis, the Child Support Agency, NCDOJ, the General Assembly, and the State moved to dismiss [D.E. 66]. On June 18, 2010, McAllister filed an omnibus memorandum in opposition to various motions [D.E. 69], and moved to recuse the attorney representing Chavis, the Child Support Agency, NCDOJ, the General Assembly, and the State [D.E. 70]. On July 16, 2010 McAllister moved for entry of default against Snow and for leave to join additional parties [D.E. 71, 73]. On July 19, 2010, the clerk entered default against Snow [D.E. 74]. On August 17, 2010, McAllister moved to amend his complaint [D.E. 76]. On September 7, 2010, McAllister moved "for commencement of prosecution" [D.E. 77] and for default judgment against Snow [D.E. 78]. On January 6, 2011, McAllister requested a "stay" of state court proceedings [D.E. 79].

As explained below, pursuant to the Rooker-Feldman doctrine, the complaint is dismissed for lack of subject-matter jurisdiction. Alternatively, abstention is appropriate under Younger v. Harris, 401 U.S. 37 (1971). Because the court dismisses the complaint for lack of subject-matter jurisdiction, all remaining motions are dismissed.

2

I.

Defendants argue that this court lacks subject-matter jurisdiction. McAllister, who is proceeding pro se, responds that he should be allowed to amend his complaint to cure deficiencies. Omnibus Mem. Opp'n 3. Although "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), that rule deals with dismissal for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The primary issue before the court is whether the court lacks subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). The presence of subject-matter jurisdiction is a threshold issue that the court must consider before the merits of the case. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94 (1998); Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). Issues regarding subject-matter jurisdiction may be raised at any time. See, e.g., Arbaugh v. Y&H Corp., 546 U.S. 500, 506–07 (2006); Friedman's, Inc. v. Dunlap, 290 F.3d 191, 195–96 (4th Cir. 2002); Jordahl v. Democratic Party of Va., 122 F.3d 192, 197 n.5 (4th Cir. 1997). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh, 546 U.S. at 514. The burden of proving subject-matter jurisdiction is on the party asserting jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

If the court does not receive evidence concerning the issue of subject-matter jurisdiction, it should view the alleged facts in the complaint in the light most favorable to plaintiff. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). If the court receives evidence concerning the issue of subject-matter jurisdiction, "the court may weigh the evidence in determining whether the facts support the jurisdictional allegations." Id. Here, the parties have submitted evidence concerning the issue of subject-matter jurisdiction, and the court has considered the evidence.

3

Essentially, the facts are as follows. McAllister claims that the defendants conspired to defraud him throughout the course of child support proceedings in Cumberland County District Court. Compl. 2. On December 20, 1988, McAllister acknowledged paternity of Snow's child, Compl., Ex. E, and entered into a voluntary child support agreement obligating monthly payments of $258.30. Illikainen Mot. Dismiss, Ex. 4 at 5–6. On January 4, 1989, the Cumberland County District Court entered an order of paternity adjudicating McAllister as the biological father of Snow's child. Compl., Ex. H. By January 18, 1996, McAllister was $4,391.10 in arrears on his support payments and summoned to court. Illikainen Mot. Dismiss, Ex. 4 at 7. Clements represented Snow at the hearing pursuant to his duties as an attorney for the Child Support Agency. Id. The court ordered a $500 down payment and additional monthly payments of $50 to be applied toward the outstanding arrears. Id. at 8. McAllister failed to comply, and was arrested on September 11, 1996. Id. at 10. He paid $924.90 and was released. Id. McAllister requested a decrease of his obligation, but failed to appear for the January 16, 1997 hearing. Id. at 14. McAllister continued to violate court orders by failing to pay his obligation resulting in multiple arrests for contempt, and by March 1, 2004, his total arrears had reached $14,379.93. Id. at 24.

On August 5, 2005, McAllister received results of a DNA test that excluded him as the biological father of Snow's child. Compl., Ex. J. By August 31, 2005, McAllister owed $19,287.63. See Illikainen Mot. Dismiss, Ex. 4 at 25. McAllister retained Illikainen, who obtained a recall of a pending order for his arrest. Id. at 26. On May 10, 2006, McAllister filed a motion requesting termination of the child support order and reimbursement of all money paid. Id., Ex. 7 at 1. On June 2, 2006, Illikainen withdrew as McAllister's lawyer. Id., Ex. 4 at 27. On July 13, 2006, the Cumberland County District Court terminated the child support order because Snow's child had reached the age of 18. Id. at 31–32. However, the court ordered McAllister to pay the

4

arrears. Id. at 33. McAllister made sporadic payments as a result of orders for contempt and garnishment. Id. at 50, Ex. 6 at 1–20. As of December 1, 2010, McAllister still owed $15,062.59. Mot. Stay, Attach. 1.

McAllister filed multiple pro se motions and complaints in Cumberland County, attempting to terminate the order to pay the arrears and claiming violations of constitutional rights stemming from the child support proceedings. Illikainen Mot. Dismiss, Ex. 7 at 8–19. McAllister's motions to terminate the child support order were dismissed for failure to prosecute. Id., Ex. 4 at 57. On February 5, 2010, McAllister's complaints were dismissed. Id., Ex. 7 at 20. On February 15, 2010, McAllister filed a notice of appeal. Id. However, no court record indicates that such an appeal was ever filed or pursued. See Court of Appeals of North Carolina, Dockets, http://appellate.nccourts.org/dockets.php?party=mcallister&submit=Search (last visited Mar. 11, 2011). On March 3, 2010, McAllister commenced this action.

II.

The Supreme Court of the United States has exclusive jurisdiction over appeals from state-court judgments. See 28 U.S.C. § 1257; Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). Accordingly, the Rooker-Feldman doctrine prohibits a "party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994)). "The Rooker-Feldman doctrine bars lower federal courts from considering not only issues raised and decided in state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." Id. (quoting Feldman,

5

460 U.S. at 486). Moreover, "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside the jurisdiction of the federal district court." Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006).

The Rooker-Feldman doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (quotation omitted). Rooker-Feldman "reinforces the important principle that review of state-court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal." Id. (quotation omitted). "The doctrine [also] preserves federalism by ensuring respect for the finality of state court judgments." Washington, 407 F.3d at 279.

The Rooker-Feldman doctrine is a "narrow doctrine." Lance, 546 U.S. at 464. In Exxon Mobil Corp. v. Saudi Basic Industries Corp., the Supreme Court limited the doctrine "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005). The Court reiterated this holding in Skinner v. Switzer, No. 09-9000, 2011 WL 767703, at *7 (U.S. Mar. 7, 2011). The relief sought in federal court must do more than upset the state court order; it must "'reverse or modify' the state court decree" for the doctrine to apply. Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quoting Exxon, 544 U.S. at 284). Accordingly, "Exxon requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani, 434 F.3d at 718 (footnote

omitted); see Washington, 407 F.3d at 280.

Here, McAllister seeks a "default judgment" be entered in the Cumberland County child support action, that this court order the state court to return to McAllister all money paid to Snow for child support, and that McAllister receive remuneration for the "persecution" that occurred during the state proceedings. See Compl. 2. At its core, McAllister's complaint challenges the state-court decisions concerning his child support. However, if McAllister is not satisfied with the child support proceedings in Cumberland County District Court (and he clearly is not), he needs to appeal within the North Carolina appellate system. If still dissatisfied, he may appeal to the Supreme Court of the United States. See 28 U.S.C. § 1257; Little v. Streater, 452 U.S. 1, 4–5 (1981). Simply put, this court lacks subject-matter jurisdiction to sit in direct review of North Carolina's trial courts. See, e.g., Brown & Root, Inc., 211 F.3d at 199; Jordahl, 122 F.3d at 202.

Alternatively, abstention is appropriate. Under Younger and its progeny, a federal court must abstain from interfering in state proceedings, even if jurisdiction exists, if the following three factors are present: "(1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006); see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165 (4th Cir. 2008). The principle of "comity" underlying Younger includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger, 401 U.S. at 44.

7

Under the second prong, Younger mandates "abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987). When evaluating this prong, the court looks to "the importance of the generic proceedings to the State," not to the specific concern of the particular proceeding. New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 365 (1989).

Here, the Cumberland County District Court retains jurisdiction over the enforcement of the order to pay the arrears. See Mot. Stay 2. Those proceedings significantly predate McAllister's filing of this complaint. Furthermore, the importance of the State's interest in child support matters cannot be questioned. See, e.g., Rose v. Rose, 481 U.S. 619, 625 (1987). "The whole subject of the domestic relations of . . . parent and child, belongs to the laws of the States and not to the laws of the United States." In re Burrus, 136 U.S. 586, 593–94 (1890). State courts are uniquely suited to decide these matters. Ankenbrandt v. Richards, 504 U.S. 689, 703–04 (1992). Finally, because the Cumberland County District Court retains jurisdiction over enforcement of the child support order, McAllister continues to have a venue to assert any constitutional claim he wishes to raise. Thus, abstention is appropriate.

III.

For the reasons stated above, defendants' motions to dismiss [D.E. 27, 30, 48, 66] for lack of subject-matter jurisdiction are GRANTED under the Rooker-Feldman doctrine. Alternatively, the defendants' motions to dismiss are GRANTED under Younger. As a result, the complaint and all other motions [D.E. 47, 52, 58–59, 61, 63, 70, 73, 76–79] are DISMISSED.

8

SO ORDERED. This 11 day of March 2011.

                                              JAMES C. DEVER III
                                              United States District Judge